UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FABRICIO AUGUSTO GOMES MORANGOM,** | Civil Action No. 25-18640 (KSH) |
| Petitioner, | MEMORANDUM OPINION |
| v. | |
| **ERIC ROKOSKY, et al.,** | |
| Respondents. | |

This matter comes before the Court on a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 brought by Fabricio Augusto Gomes Morangom. For the reasons explained in this Memorandum Opinion, the Court denies the Petition without prejudice and, subject to specific requirements set forth below, lifts the temporary stay enjoining Respondents from transferring Petitioner or removing him from the United States.

### I. RELEVANT BACKGROUND

Petitioner is a citizen of Brazil who came to the United States with his wife over 20 years ago in 2005. (Petition at ¶ 1.) He is a father to two U.S. citizen children, supports his family, pays taxes, and has attended the same church for 13 years. (*Id.* at ¶ 2.) It is undisputed that he has no criminal history and deep ties to his community. (*Id.* at ¶ 28.) But on December 9, 2025, as part of a targeted enforcement, Petitioner was pulled over and taken into custody by Immigration and Customs Enforcement ("ICE") while he was driving to work. (*Id.* at ¶ 3.)

Although Petitioner has lived freely and, by all accounts, peacefully in the United States for over two decades, he has a final order of removal, which was entered in absentia on December 13, 2005. (*See* ECF No. 1, Exhibit B to Petition at 31; *see also* ECF No. 9-4, Notice to Appear

dated September 13, 2005.)  In a declaration submitted with his Petition, Petitioner avers that he did not speak Spanish or English when he arrived in the United States and did not understand the immigration officers who processed him or the papers he received; for years after his arrival, he did not realize that he had a final order of removal.  (ECF No. 1 at 12, Petitioner's Decl. at ¶¶ 4, 8.)  Over the years, he met with several attorneys, but no one explained that he had been ordered removed in abstentia or that the notice he received was defective.  (*Id.*, Petitioner's Decl. at ¶¶ 8-9.)

After meeting his current counsel in April 2023, Petitioner's learned that he may have an avenue for relief and filed a motion to reopen proceedings based on defective notice and the Supreme Court's decision in *Niz-Chavez v. Garland*, 593 U. S. 155, 160-62 (2021) (holding that to satisfy § 1229(a)(1), a NTA must set out in a single document "[t]he nature of the proceedings against the alien," "[t]he legal authority under which the proceedings are conducted," "[t]he time and place at which the proceedings will be held," and the consequences of failing to appear).  (*See id.* at ¶ 10.)  The immigration court denied Petitioner's motion to reopen on March 19, 2024, and denied his motion to reconsider that denial on April 23, 2024, finding that Petitioner waived the notice argument by failing to provide a viable address.  (*See* ECF No. 9-2.)  On May 16, 2024, Petitioner filed an appeal of the denial of the motion to reconsider with the BIA.  (ECF No. 9-3.) That appeal was pending at the time he filed the instant Petition on December 15, 2025.

The Petition challenges the lawfulness of his immigration detention and raises two counts for relief: 1) a violation of his Fifth Amendment right to substantive due process and 2) a violation of his Fifth Amendment right to procedural due process (ECF No. 1, Petition at 18-19); the Petition was accompanied by a motion for a temporary restraining order ("TRO"), seeking immediate release from custody (or a bond hearing) and asking the Court to enjoin his rearrest.  (ECF No. 2,

TRO at 20.) On December 16, 2025, the Court temporarily enjoined Petitioner's transfer from Elizabeth Detention Center and his removal from the United States to preserve the status quo until his claims could be heard on the merits. (ECF No. 3.)

The Court subsequently ordered a full answer and set a briefing schedule but denied without prejudice Petitioner's TRO motion because he had not shown a likelihood of success on the merits of his unlawful detention claim (ECF No. 4),[1] as he had conceded that he has a final order of removal dating back to 2005 and that he was "mandatorily detained under 8 U.S.C. § 1231(a)[.]" (ECF No. 1, Petition at ¶ 4; ECF No. 2, TRO at ¶ 4.)

In a letter answer filed on January 29, 2025, Respondents erroneously stated that Petitioner was detained under 8 U.S.C. § 1225(b)(2), which applies to certain noncitizens without a final order of removal who are inspected at or near the border. (*See* ECF No. 6.) In light of this confusion, the Court issued a Text Order requiring Respondents to confirm whether Petitioner has a final order of removal and show cause why he should not be released on an order of supervision. (ECF No. 8.)

Respondents filed an amended answer, arguing that Petitioner is detained pursuant to a final order of removal and that this Court should deny the Petition because his detention is lawful.[2] (ECF No. 9.)

---

[1] To succeed on a TRO motion, a petitioner must to demonstrate (1) that he is reasonably likely to prevail eventually in the litigation and (2) that he is likely to suffer irreparable injury without relief. If these two threshold showings are made, the District Court then considers, to the extent relevant, (3) whether an injunction would harm respondents more than denying relief would harm the plaintiff and (4) whether granting relief would serve the public interest. *See Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 319–20 (3d Cir. 2020) (citing *A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 105 (3d Cir. 2013)).

[2] Respondents specifically argue that the Petition is premature because Petitioner is detained within the 90-day "removal period," during which detention is mandatory. *See* 8 U.S.C. § 1231(a)(2). According to Respondents, that mandatory detention period for Petitioner began on December 9,

3

Petitioner filed a reply brief noting that the amended answer was filed late and arguing that Respondents should not be permitted to change their legal argument. (ECF No. 12.) Petitioner further argued that the removal period has not commenced in light of Petitioner's pending motion to reopen proceedings and that the Court should provide Petitioner a bond hearing under § 1226(a). (*Id.*) On February 23, 2026, Petitioner's counsel submitted a letter, emphasizing that his removal was not imminent because his appeal to the BIA was still pending and arguing for her client's release based on his child's serious medical needs. (ECF No. 12.)

The Court ordered a Show Cause hearing for March 4, 2026. (ECF No. 13.) Prior to the hearing, Petitioner's counsel submitted a letter notifying the Court that Petitioner's appeal to the BIA was denied on February 27, 2026. (ECF No. 15.) Counsel argued that Petitioner's detention does not serve a legitimate purpose and submitted additional evidence that he is not a flight risk or danger to the community. (*Id.*) Counsel also submitted a written notice from ICE that Petitioner's custody status would be reviewed on or about March 4, 2026. (ECF Nos. 15, 15-1, 15-2.) Prior to the hearing, Respondents submitted a copy of the BIA decision dismissing Petitioner's appeal and motion to reopen proceedings. (ECF No. 17, 17-1.)

At the hearing on March 4, Petitioner's counsel represented that Petitioner had not decided whether to file a petition for review. Counsel reiterated that he is not a flight risk or a danger to the community and should be released.

Respondents produced the deportation officer responsible for Petitioner's case, and she testified about the process for removing Petitioner to Brazil. The deportation officer estimated it could take a month to complete Petitioner's removal, and it may involve transferring him to another

---

2025, when DHS arrested and detained him pursuant to his final order of removal. (ECF No. 9 at 3.)

4

detention facility. The deportation officer also testified that she could not move forward with the removal process due to the Court's temporary stay Order entered on December 16. Respondents' counsel argued that the only remaining legal impediment to Petitioner's removal is this Court's temporary stay of removal.[3]

Following the March 4 hearing, Petitioner's counsel filed a letter notifying the Court that she had conferred with Petitioner, and he did not wish to file a petition for review. (ECF No. 19 at 1.) Counsel renewed her request for Petitioner's release, stressing that he is the father of two United States citizen children and should be permitted to say goodbye to his family outside of detention. (*Id.* at 2-3.) If the Court were to deny release, counsel requested that Petitioner's family be permitted to deliver clothing and personal items. (*Id.* at 3.)

Respondents' counsel filed a letter response on March 5, requesting that the Court lift its temporary stay of transfer and removal. According to Respondents' counsel, ICE has made necessary preparations for Petitioner's removal but is unable to book his flight to Brazil while the Court's stay Order remains in effect. (ECF No. 20.) Moreover, Respondents' counsel represented to the Court that ICE will permit Petitioner's family to deliver additional clothing and permitted personal items. (*Id.*)

## II. LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is available to every individual detained within the United States. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art. I, § 9, cl. 2). District courts have the power to grant writs of habeas corpus. 28 U.S.C. § 2241(a). A district court's authority includes jurisdiction to hear habeas challenges to

---

[3] The Court stated on the record that the stay Order by its terms does not prevent ICE from moving forward with preparations for removal and that was not the Court's intention.

5

immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The burden is on petitioner to show that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

### III.    DISCUSSION

The legal issue before the Court is whether Petitioner is lawfully detained under § 1231, which governs detention of noncitizens with a final order of removal.[4] Petitioner's in absentia removal order is, by statute, a final order of removal. *See* 8 U.S.C. § 1229a(b)(5); *Matter of Guzman*, 22 I. & N. Dec. 722, 722-23 (BIA 1999). That Petitioner filed a motion to reopen proceedings does not alter this Court's analysis. *See* 8 C.F.R. § 241.4 (explaining that a noncitizen "who has filed a motion to reopen immigration proceedings for consideration of relief from removal . . . shall remain subject to the provisions of this section unless the motion to reopen is granted).

Section 1231 requires the government to remove noncitizens who have a final order of removal within 90 days, *see id.* at § 1231(a)(1)(A), and the 90-day period has three possible start dates:

> (B) Beginning of period
>
> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

---

[4] An order of removal becomes final at the earlier of two points: (1) "a determination by the [BIA] affirming such order," or (2) "the expiration of the period in which the alien is permitted to" petition the BIA for review of the order. *Riley v. Bondi*, 606 U.S. 259, 267 (2025) (quoting 8 U.S.C. § 1101(a)(47)(B).)

8 U.S.C. § 1231(a)(1)(B). The government may also extend the removal period if the alien "fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). During the 90-day removal period, detention is mandatory. *Id.* at § 1231(a)(2).

"If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." *Id.* at § 1231(a). The government, however, may continue to detain certain categories of aliens, including those "inadmissible" under 8 U.S.C. § 1182. *See* 8 U.S.C. § 1231(a)(6); *see also* 8 C.F.R. § 241.4 (setting out requirements for periodic custody reviews after the 90-day removal period has expired). Continued detention is often referred to as the "post-removal-period." *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021).

Respondents maintain that Petitioner is detained within the 90-day "removal period," during which detention is mandatory. (*See* ECF No. 9 at 3 (arguing that the mandatory detention period began on December 9, 2025, when DHS arrested him and detained him pursuant to his final order of removal.) The Court disagrees. As outlined above, § 1231 lists three specific events that trigger the 90-day removal period, and apprehension or arrest by immigration officials is not a possible start date. Therefore, in Petitioner's case, the removal period started on the date on which his removal order became final and expired 90 days later. Nor was the removal period suspended because Respondents did not take Petitioner into custody for two decades, as the statute permits extension of the removal period only where the noncitizen interferes with his own removal, and there is no evidence of that here. To the extent Respondents seek dismissal of the Petition as

premature because Petitioner is subject to mandatory detention, the Court rejects that argument and finds that Petitioner is detained in the post-removal-period.

Whether Petitioner's continued detention under § 1231 comports with the Fifth Amendment is governed by *Zadvydas v. Davis*, 533 U.S. at 701, which held that the INA's post-removal-period detention provision contains an implicit reasonableness limitation of six months, after which a noncitizen may not continue to be detained if "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas* addressed the substantive due process component of the Fifth Amendment and held that an alien's right to substantive due process could be violated by prolonged detention even if the alien's right to procedural due process had been satisfied. *See* 533 U.S. at 697. Courts here and elsewhere have held that a detainee is not precluded from challenging the reasonableness of his detention before such time, however. *See, e.g., Munoz-Saucedo v. Pittman*, 789 F.Supp.3d 387, 395 (D.N.J., 2025) (finding that the petitioner who was previously detained and released met his burden to show that he could not be removed to his home country or a third country).

Here, Petitioner has been detained since December 9, 2025, or approximately 90 days. (ECF No. 2, TRO at 1.) Under the statute, the Attorney General retains discretion to detain an inadmissible noncitizen following the expiration of the 90-day removal period or release him on an order of supervision, and, by regulation, ICE must give him notice and an opportunity to be heard before detaining him for longer than 90 days.[5] *See* 8 C.F.R. § 241.4; *see also Jimenez v. Cronen*, 317 F.Supp.3d 626, 636 (D. Mass. 2018) ("The presumption created by *Zadvydas*, that up

---

[5] The record reflects that ICE provided Petitioner a notice that it intended to conduct a custody review on or about March 4, 2026. The parties have not informed the Court whether this review occurred or the result of that review. Petitioner does not raise and the Court does not reach the issue of whether his arrest after the 90-day removal period expired alters the timing of this review under the regulations.

to six months of detention is reasonable, is based on the assumption that ICE followed the process prescribed by its regulations to ensure that continued detention was justified."). Although Petitioner argues that he is not a flight risk or danger and should be released, he does not point to any specific portion of the statute or the governing regulations that prevents ICE from arresting him or requires his release on an order of supervision. Therefore, the Court denies relief on Petitioner's procedural due process claim.

The length of Petitioner's detention is not presumptively unreasonable under *Zadvydas* and no exception to the general rule applies. While Petitioner's appeal to the BIA was pending, there was some question as to whether he would be removed in the reasonably foreseeable future. In light of the BIA's dismissal of Petitioner's appeal and motion to reopen, Petitioner's decision to forgo a petition for review, and Respondents' representations that ICE is capable of removing Petitioner to Brazil in a month or less, Petitioner cannot show that there is no significant likelihood of removing him to Brazil in the reasonably foreseeable future. Therefore, his substantive due process rights are not violated by his continued detention pending removal, and the Court also denies relief on Petitioner's *Zadvydas* claim.

Petitioner asks the Court to release him on an order of supervision for humanitarian reasons to spend his last days in the United States with his family outside a detention facility. There is no evidence that Petitioner presents a danger to the community or a flight risk. Indeed, he is deeply rooted in the United States not only by decades of living in this country but by his wife and two United States citizen children. This Court, however, does not have jurisdiction to review ICE's discretionary decisions, *see* 8 U.S.C. § 1252(a)(2)(B), even where it sharply disagrees.[6] And,

---

[6] More than once the Court inquired of the deportation officer why detention was necessary as a practical matter, given the circumstances, and her answer was the same: there is an order of

9

although this Court has authority to order interim release pending a decision on the merits of the Petition where extraordinary circumstances are present, that avenue for relief is extremely limited, and the Court has already determined that Petitioner's due process rights have not been violated.

Having denied habeas relief on Petitioner's procedural and substantive due process claims, the Court will lift the temporary stay of transfer and removal subject to the following requirements. Respondents are ordered to provide a written update on the docket every Tuesday and Friday; each update shall provide specifics regarding the scheduling of Petitioner's transport and/or flight, Brazil's willingness to accept him, and the name and address of the facility where he is detained. In addition, Respondents are also ordered to permit Petitioner's family to bring him clothes and other personal items <u>prior to his transfer</u> from this District.

An appropriate Order follows.

*s/Katharine S. Hayden*
Katharine S. Hayden, U.S.D.J.

Dated:  3/10/2026

---

removal.  Her supervisor explained that detention authority exists as the most efficient way to execute an order of removal.  This one is 20 years old.